May it please the court, this is Coulter Paulson of Squire Patton Boggs and the University of Cincinnati Sixth Circuit Clinic, on behalf of Mr. Evan Johnson. I'd like to reserve three minutes for rebuttal. And I'd like to actually start with the pure legal issue before we get into the fact-intensive arguments. The trial court refused to include all the elements of a conspiracy under Michigan law in the jury instructions when the indictment charged a violation of Michigan conspiracy law. The jury instruction asked if Mr. Johnson intended that at least one other conspirator would commit a racketeering act of robbery. The Michigan conspiracy law, which has two elements that go to that intent. It's first that defendant and someone else knowingly agreed to commit the crime. And second, that the defendant specifically intended to commit or help commit that crime. The Michigan model instructions that I was just quoting from cite back to People v. Atlee, which describes conspiracy as a two-fold specific intent crime. The jury instructions, however, in this case only had a one-fold specific intent instruction. They said that the intent that somebody else would commit the crime. But not that Mr. Johnson would himself commit or help to commit the crime. So the jury instruction language plainly modified both the mens rea and the conduct elements of the crime. And that constitutes a constructive amendment. You could also look at it as an apprentice violation. But whatever... His remedy to address the objection was what? It was overruled. Just didn't buy it? Yeah. The instructions stayed the same. And I think it's important to note that there's no harmless error for a Fifth Amendment violation under Sterling v. United States. But if the error was so different from the normal case, it was mostly these Facebook messages. I think that his intent to help commit racketeering was something that the jury should actually was thinking about and interested in. And so I think there, even though I don't think you need to prove harm, I think that harm could be shown. In fact, the jury... I think I'm, I hope I'm not missing the point of the argument about that instruction. There was a substantial amount of evidence by all these witnesses to lay out the situation and the leadership here, correct? There was. So how did the instruction not work with that evidence? So the evidence, I mean, there was kind of two different sets of evidence at the trial. The first was the general evidence that talked about how the gang worked. And there was lots of talk about how gang leadership worked, about how crimes were committed. And then there was the evidence that was specific to Mr. Johnson, which was mostly divorced from that evidence. Most of that was the Facebook messages. And so, interestingly, the jury found that Mr. Johnson was not, in fact, responsible for the murders that were the focus of the trial. What it did convict him of was the robbery conspiracy. And I think looking at the evidence, that may have been a compromise between the reliance on Facebook messages and the prosecution's, on one hand, and the prosecution's insistence on the other. We don't speculate about the rationale for the jury verdict. Right. But what we have to do, and I'm turning to the argument that the alias Uncle Murda should have been excluded from trial. What we have to do is we have to determine whether the evidence was overwhelming. And if the evidence was overwhelming, then it doesn't matter whether the alias was proper or whether it wasn't proper. But if it was a closer case than that, if the jury might have, if that was an important issue for the jury, then a new trial would be required. The judge sort of took a compromise approach to that alias, struck it from the indictment, and it was really limited. It was mentioned a limited number of times during the trial,  I do disagree with the characterization. And I think that, I think what's important, it was a long trial and, you know, and he brought it out, it was brought out a number of times, not as many as some of the cases that we cite, but more than others. But I think what was important is in the closing argument, when it was mentioned, you know, four or five times, to great effect. They did a wonderful job of painting him as a godfather type uncle who was directing murders from the shadows. But the jury didn't buy that. They didn't. But what I think you have to find is that the jury didn't buy that he was doing that. But it did convict him of the robbery conspiracy. And my argument is that the robbery conspiracy evidence isn't overwhelming, that it would be possible. At this point here, you're targeting his gang name, Uncle Murda. Yes. You're targeting that, and as Judge Gibbons points out, it was, they didn't convict him of murder. No, they didn't. Okay, so the robbery was enhanced, the evidence is enhanced by the issue of the name. That's how we got to 20. Okay. Yeah, and so our argument is that they wouldn't, that the jury, you can't say with certainty that the jury wouldn't have acquitted him on that count as well if it wasn't for this unfairly prejudicial evidence. I'd like to move on real quick. I see I have one minute left to a 924C argument. Which, so the court's precedent requires specificity. Volkman says dominion and control is required. Mackey says that you need a specific nexus, you need specific evidence, like whether the gun was loaded, the type of weapon. In fact, it held that there was a 924C violation when the government proved that there was an illegally possessed loaded short-barreled shotgun in the living room of the crack house, easily accessible to the defendant, and located near the scales and razor blades used to do the drugs. In this case, we have four Facebook messages with unidentified people about guns that the discussing crimes that the prosecution never identified as being actually committed. In fact, the Facebook messages, in those messages, Mr. Johnson says that someone else had the gun. It was either black, my bro, or some niggas had the gun. So, and Mr. Johnson also mentions prices. These aren't guns he controls, these are guns he knows about. And I think under... So, that's what you would infer from the evidence, but perhaps another inference is permitted by the evidence. He appears to be offering them for sale, which implies constructive at least, if not actual possession. Well, he's, I think the difference I would say is he's pointing to somebody, and he's pointing, and I realize that the distinction is kind of fine. What he's saying is, here's where you can get guns. But the cases require, I think Bailey is important, it says access isn't enough. It has to be either exclusive access or actual control. But he doesn't say, I don't actually have these guns. They are in the possession of someone else, and I could maybe ask him if he could sell it to you. That's not, that's the scenario you're conjuring up, but that's not the proof either, right? So, I think that that's exactly what the Facebook messages say. They say, can I have a gun? And he says, well, my bros have one. It's $500, I think. Your time's up. Thank you very much. May it please the Court, good morning. Harold Gurowitz, appearing on behalf of Ramiah Jefferson. The Judge Edmonds erred by denying my client's motion to suppress evidence obtained from an examination of a cell phone that was seized at the time that he was arrested. The cell phone nexus issue that we've raised is substantially unlike almost every other case that has been brought before this Court concerning both the issue of nexus and good faith, because the usual scenario is a search warrant and the question of probable cause or nexus or good faith with regard to the search of a residence. Even the Pepper case, which Mr. Goetz has brought to this Court's attention, particularly last Friday, is one where the affidavit was in support of a warrant to search the residence of Mr. Pepper. That's what he complained about in his 1983 action. This is different, particularly because of what it is that Justice Roberts said in Riley v. California about four years ago, that a search of a cell phone is different than the search of almost anything else, because it would expose more to the government than the most exhaustive search of a house. It contains in digital form sensitive records, but also a broad array of private information never found in a home in any form, unless a cell phone is found in the home. And it is that distinguishing characteristic, I think, that sets the issue in this case apart from the cases that deal with the search of a residence. The search warrant in this case was issued on April... So, do you find this distinction that you are arguing for articulated in the case law, that is the contrast with a house? There are certainly criteria set forth in cases such as... Are the cases you rely on based on distinguishing between a cell phone search and a home search? Or is that your own conclusion about what's apt to be found in a cell phone? Well, the only case that we have cited, Judge Gibbons, that deals specifically with the search of a cell phone is Bass, the case from this court, which is one where the probable cause set forth in the affidavit relied upon evidence that was obtained during the investigation leading up to that affidavit, in which it was specifically set forth that the conspirators in that case used cell phones. In addition, it described the agent's observation that at the time of the defendant's arrest, he was punching information into his cell phone, apparently for the purpose of alerting co-conspirators of what was going on. The only other case, quite frankly, that I've been able to locate that concerns these issues particularly is from the D.C. Circuit, and I'm sorry for shuffling these papers, called the United States v. Griffith, and in a moment I'll find the citation to that. It's one where there was a search warrant for the examination of a cell phone, and the court concluded that in that case what effectively was relied upon was inference upon inference upon inference, similar to what occurred here. And that's the case because in this circumstance, the affidavit prepared by Agent Nether about over 30 days after the arrest, after the issuance of the indictment in this case, paragraph 9 only sets forth that the defendants in this case, nine of them, were charged with offenses. It lists them. It says nothing about the details of those offenses. There's no reference to the content of the indictment. It was not attached or referred to by reference. The search warrant in this case is different from most other cases because it asks for examination of 11 separate cell phones. And to deal with specific facts for Mr. Jefferson, in paragraph 15, it has 10 sentences, none of which refer to any particular use of that cell phone by Mr. Jefferson. It does not explain why he was in the house where he was arrested. It doesn't say it was his house. It says it was the house of another person identified as Mr. Centimilli. These facts, I believe, substantially distinguish this circumstance from all of these other cases. Here, Agent Nether knew at the time that he completed the affidavit that even though about 20 days had gone by between the date of his arrest of Mr. Jefferson and seizing the cell phone, that he had done no additional investigation, that he drew no facts from the investigation concerning use of cell phones by anybody in the course of the alleged conspiracy that had now been charged in an indictment. There are no facts set forth in the affidavit about the gang as an enterprise. In fact, the indictment... About this gang, am I confusing this case? The agent is setting forth his experience with gangs that manage drug operations, generally speaking. You're right. He doesn't tie it to any particular... It didn't seem to me that he didn't tie it to any particular activity of this gang or your client. But these agents seem to be just so familiar with the operations and the routine for this kind of endeavor. Well, he does say based upon his training and experience. That's what all the introductory paragraphs essentially refer to. He talks about this particular gang, the Bounty Hunters gang, without any attribution to any source of information. What is missing from each of those allegations, however? Is anything specific about this gang's activities? About Mr. Jefferson's activities? Mr. Jefferson's use of his cell phone? The affidavit in support of the search warrant refers to the search of the residence, right? It does in paragraph 15. And there was a marijuana growing operation found there in three firearms. More importantly, perhaps, Mr. Jefferson had at that time been indicted for RICO conspiracy and possession of a firearm in furtherance of a crime of violence. He admitted that the particular gun in question was his. You don't think there's probable cause to think that that... I mean, there's a lot of evidence of cell phone activity or computer-generated activity. I think cell phone exclusively. And so there's a lot of reason to think that this particular phone had been used to commit crimes. Well, Your Honor, I respectively disagree for a couple reasons. One is that the description of the indictment in paragraph 9 says that nine defendants had been charged in the case. It doesn't say which ones were charged in which counts. It doesn't say what any count was about. It doesn't say that, in fact, in the affidavit that Mr. Jefferson was charged. You've answered my question enough, and your time is up. Let's see if Judge Guy has anything further for either counsel. I just wanted to ask Mr. Gurwitz, the judge backed up the ruling of denying the suppression with the good faith exception. What's your comment relative to that? Your Honor, it is that in this case there are no objective facts set forth in the affidavit upon which this officer could reasonably rely. For the reasons I've just outlined, he didn't do any investigation after the date of his arrest or after the date of the indictment, which is referred to in his affidavit in anywhere at all. There is no reference to the use of this cell phone. There's no indication except that Mr. Jefferson said it was his when it was found in the living room that it had, in fact, ever been used at all. Based upon Riley and the emphasis that is placed in that court by that opinion on the privacies of life that are contained within this mini-computer, I think that it's clear that Agent Nutter should have known and didn't exercise reasonable judgment. Thank you. Thank you. Mr. Goetz. May it please the Court, Andrew Goetz for the United States. I'll start with the last issue first. The district court here properly held that the search warrant for Ramai Jefferson's cell phone contained probable cause or at the very least satisfied the good faith doctrine. Judge Cook, in answer to your previous question to Mr. Gurwitz, this affidavit actually did not rely only on the agent's experience with gangs generally. It included three paragraphs describing his investigation of this particular gang, the Bounty Hunters, and I'm referring to paragraphs 6, 7, and 8. Paragraph 6 described how that gang had started and how it expanded to Detroit. Paragraph 7 described how the gang operated, how the gang made money from dealing drugs and armed robberies, and it described some of the other racketeering activity too. Paragraph 8 then explained that the gang members used cell phones as part of that racketeering activity. They used it to track and plan their crimes, track the gang's activity. They used it not only for direct communication via the phone function but also through the Internet function for social media. So it didn't rely just on experience with the world or experience generally with gangs. It talked about this particular gang. Combine that, Judge Gibbons, with your question. Yes, they were indicted of a RICO conspiracy. Now that only gets part of the way there. We recognize that probable cause to arrest is different than probable cause to search, but it gets most of the way there. And the reason it gets most of the way there is the type of crime. These are racketeering offenses. Yes, Mr. Gerowitz is correct that it did not specifically say Mr. Jefferson had been indicted for the racketeering conspiracy as opposed to the violent crimes in aid of racketeering offenses and related 924C crimes listed in there. But all of those rely on the same nucleus of elements and facts, the existence of a racketeering conspiracy or existence of a racketeering enterprise, excuse me, and that that enterprise is committing racketeering activity. Paragraphs 9 and 10 are specific that Mr. Jefferson was among those indicted and arrested as part of that indictment, that those charges dealt with the gang, not some disparate set of charges, and that those charges were, and I believe this is a direct quote, in connection with their role in the gang. So once we have that, once we have the grand jury's conclusive finding on probable cause that Ramiah Jefferson and these other defendants had committed these crimes, it's not a difficult inference to say that these crimes by their very nature would have been committed using phones. This is a conspiracy or a racketeering enterprise. It necessarily involves this level of communication between co-conspirators. And that was true in Pfeffer, too, the case we cited in our 28-J letter on Friday. In Pfeffer, if the court recalls, the probable cause was that the defendant had sent computer-generated false mailings. The officers didn't know for sure that the defendant had a computer, or sorry, suspect in that case, that he had a computer. They didn't know for sure that would be in his home. It was a reasonable inference from the inherent nature of the charges, from the inherent nature of the crime, that he would have a computer, that it would be in his home, and that evidence would be on it. That was just common sense. It was equally common sense here. That is particularly true when we combine it with the description of how the gang operated, that this gang used cell phones, and this is paragraphs 7 and 8, to commit these crimes. This specific gang did. Combine that again with paragraph 15, describing how the phone was seized from Ramiah Jefferson when he was arrested. In that paragraph, and I believe Judge Gibbons, you asked this question, the affidavit explained that Ramiah Jefferson was arrested with his phone, and he admitted it was his, and he was arrested in a house with a marijuana girl. The very type of activity referred to in paragraph 7 that the gang used to make its money, distributing narcotics. We knew from just the circumstances of the arrest that he was still pretty active with the gang and that he had that phone in that house, and therefore it's another fair inference that he was likely using that phone as part of his activity with the gang. And that substitutes for what Mr. Gerowitz says is missing from Bass. In Bass, the affidavit included similar allegations. The defendant was involved in a criminal conspiracy, in that case identity theft and fraud. That conspiracy used phones, and that when the officers arrived to arrest him, he was texting on the phone. Now, yes, Mr. Jefferson was not texting on the phone when they arrived, but it's reasonable to infer, because that's the phone he had, that he was using it in connection with his gang activities and the marijuana that's right there in two bedrooms of the house, along with the three guns. It's especially interesting that defense counsel cites Riley. Riley only required a warrant. In fact, that was the money line from the Supreme Court's opinion, that agents need to do what the Fourth Amendment requires, and that's get a warrant. The agents did that here. They got a warrant. They complied with Riley. What Mr. Gerowitz is talking about is whether or not something's a search in the first place. We don't contest that this was a search. They got a warrant. Griffith, the D.C. Circuit opinion Mr. Gerowitz has raised for the first time today, is distinguishable for two reasons. First, in that case, unlike in many cases, the agents didn't know for sure that the defendant had a phone. Unlike here, they didn't know for sure that he had a phone, and indeed had reason to think that he didn't. He had been incarcerated for the year between the suspected crime and when they searched for his phone, and one of his other gang members on a recorded phone call had actually said he didn't have a phone. So there, unlike in most circumstances, unlike Pfeffer and unlike here, the agents had no reason to think he even owned a phone. Secondly, in Griffith, the shooting occurred one year earlier, and he had been incarcerated in the meantime. It would have been odd for the defendant there to have evidence on his phone, been incarcerated, and then gone and picked up that phone again after being incarcerated and still have had evidence on the phone. Here, in contrast, we have an ongoing RICO conspiracy where he is arrested on an indictment at the end of it. And Judge Guy, getting to your question on good faith, Griffith actually split two to one on those facts on good faith. Here, the district court found probable cause, the magistrate judge found probable cause, and the district court also found good faith. This is precisely the type of case where the good faith doctrine, at the very least, should apply. I'm happy to answer any further questions on that issue. Otherwise, I will move to the RICO conspiracy enhancement. The defendant's challenge to the RICO enhancement fails for three reasons. The plain language of the RICO statute, the language of the jury's special verdict, and the language of the indictment. Let's start, as we always do, with the language of the statute. I'm referring to section 1963A of the RICO statute. That section increases the defendant's statutory maximum for life for a violation of 1962, which is the RICO statute, if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment. That statute thus refers back to the underlying RICO conspiracy and requires the jury, under Apprendi, to find the racketeering conspiracy, that underlying violation involved a racketeering activity for which the statutory maximum is life imprisonment. Now, what do we know about the racketeering conspiracy requirements? We know under Salinas that the government doesn't have to prove for a racketeering activity, for a racketeering conspiracy, that the defendant committed any activity at all, that any completed conduct happened whatsoever. So Salinas forecloses their argument that the government had to prove completed conduct here at all. We know from this court's decision in Wilson that the government doesn't have to prove a specific racketeering act, an agreement to a specific racketeering act. The government only needs to prove that the defendant agreed to a type of racketeering act. So let's look at the verdict form. The verdict form said, did the defendant agree and intend that at least one other conspirator would commit a racketeering act of robbery? So it required a finding on types. Robbery, just like Wilson required. And indeed, if this court looks at this decision in Rios, and I'm talking about pages 411 and pages 434 to 35, that case actually involved a very similar type, drug dealing. The enhancement there was for drug dealing, over 5 kilograms of cocaine over a 20-year period. It's tough to imagine that that would have required a specific act. That was a 20-year period. So it's quite similar to what we have here. So the jury's special verdict form here was actually expressly crafted to comply with 1963A and Apprendi to require that jury finding on the type of racketeering activity, robbery, that increased the statutory maximum. Let's move to the third part of that analysis, and that's the indictment. And we should start here with the body of the indictment, not the notice at the end, but the body of the indictment. And that's at page 476. The body of the indictment charged the racketeering conspiracy and charged that as part of that conspiracy, the defendant agreed to acts involving robbery. Acts involving robbery, and those acts included armed robbery, assault with intent to rob, aiding and abetting, attempt, and conspiracy, and included all the different variants of robbery under Michigan law. It is black-letter law that the government didn't need to instruct on all of them. The government frequently indicts in the conjunctive and instructs in the disjunctive. That's been settled law for, I think, centuries now. The government didn't have to instruct on all of them. And that charge by itself charged racketeering activity involving robbery, exactly what was instructed on. So you have a grand jury finding right there, and notice to the defendants that the charge racketeering conspiracy, that violation of 1962, involves robbery. Indeed, that would be just like drug charges, 924C charges, charges this court typically sees, where, for instance, drug type and quantity are in the body of the charge, and brandishing or discharging for 924C counts are included in the body of the charge. It sufficed to put it in the body of the charge. But it actually went a step further and included an extra notice of enhanced sentence to put the defendants on notice that, yes, this is going to have an increased statutory maximum. Now, that actually wasn't required at all. The indictment would have been sufficient without it. But that notice provided, well, additional notice that these defendants would have an increased statutory maximum. And contrary to Mr. Polson's contention, that notice, I'm talking about in the middle of the paragraph, page 495, said, did conspire to commit acts involving robbery. Acts, not a specific robbery, acts involving robbery. It's included at the end of count one, acts most naturally refers to racketeering acts. And the citations at the end don't just refer to conspiracy, they refer to the statute for armed robbery. And that's 750-529. Now, so even the surplusage at the end, the notice that didn't have to be included, sufficiently included what was in this final verdict form. And I note that because this was surplusage, because this didn't have to be included at all, the defendants really have to demonstrate some sort of prejudice if they claim they're confused by the notice. That's pretty settled, where there's surplusage, the defendant has to demonstrate prejudice. They can't do that. Everything at this trial would have happened exactly the same because of the body of the RICO conspiracy charge. That's why they're trying to move this case into structural error land, make it a constructive amendment. They can't do that because it's in the body of the charge. We know the grand jury had a finding on the charge. It's not a constructive amendment. And I'd say, as a final point, it would be odd to say that their confusion, which they don't claim prejudiced them at all, about an unnecessary notice that the government included to put them on notice that they had a higher statutory maximum, somehow is a structural error requiring per se reversal. It's not how structural errors usually work. I'm happy to answer any further questions on that issue. Otherwise, I will move to the gang name with my remaining time. The district court here properly allowed the government to introduce limited evidence of Evan Johnson's gang name for two independent but overlapping reasons. One is because it was necessary to identify him in the evidence in several of the exhibits we've cited in our brief. And two is because it was an element of the offense that Mr. Johnson associated with the gang. This case is not like a felon in possession case or a drug case where gang information is only limited to a specific purpose. It's an element of the offense here. If this court looks at its decision in Rios, the court made the same point, that where something is an element of the offense, where a defendant's gang involvement is an element of the offense, the gang evidence goes from being unduly prejudicial to quote-unquote highly relevant. And that's the term that the court used, highly relevant. Evan Johnson's gang name, which everybody concedes was his gang name, tied him to the gang. That's the point of a gang name. It shows his association with the enterprise. He also spelled it with a K. That's not the traditional spelling, U-N-K-L-E. And he spelled it with a K, and there's testimony on this point, because this was a Bloods gang. They replaced C in every word with K-X-B, a letter to signify their disrespect for the Crips. So this name by itself referred to his role, his association with this enterprise. Getting back to Rios, if this court looks at Note 5 of its Rios decision, and I direct it to Note 5 because Note 5 makes an important point. Note 5 points out that even where a defendant stipulates to his association with a gang, the government is still allowed to prove its case under Old Chief. That is settled law that under Old Chief, even where the defendant wants to stipulate to an element, the government is entitled to prove its case, with the exception of the status of a defendant's prior conviction. Here, Mr. Poulsen is actually trying to have it stretched even further than the argument that the Supreme Court rejected in Old Chief and that this court rejected in Rios, because he was never offered, and is still not offering, to stipulate that he was associated with this gang. In fact, he contests quite strongly that he was associated with this gang. So he's trying to have it both ways. He's trying to say, on the one hand, you can't show that I was associated with this gang, but on the other, you should be precluded from introducing this evidence showing I was associated with the gang. He can't do that. And I note that even under Old Chief, under Old Chief, defendants in far worse positions than Mr. Johnson have tried to stipulate to elements of the offense, and this court has said time and again, no, under Old Chief, except for prior conviction, the government is entitled to prove its case. Child pornography cases are one very strong example of that. Defendants often, in child pornography cases, want to stipulate that they had child pornography. I'm sure they'd like to redact some of it, too. This court has said, no, the government is entitled to prove its case. It was appropriate here with the gang name, too, particularly given that several of the exhibits either didn't make sense if the gang name wasn't included or the jury didn't know it, or had a different or less strong meaning than with that gang name included. So the use of the name toward the end of establishing gang membership and that all of it involved this with regard to the conspiracy, the primary objection, as I read in the brief, both counsel, with regard to the, is it Johnson or Jefferson, who's Uncle Murdaugh? It's Evan Johnson. It's about use of that in trying to persuade the jury in final argument. That's a little closer to the line, is it not, counsel? It can be, but it wasn't here, Judge Cook, and I think this gets to your question, Judge Gibbons. This is not like Farmer where the government, in Farmer, if you read that case, the government used the defendant's gang name virtually every line, gratuitously. They used it 30 times there in rebuttal closing alone, 30 times. Here the government used it six times during initial closing, not once during rebuttal, not once during opening. Of those six times, three were direct quotes from trial exhibits. That has to be proper. We're allowed to quote the exhibits in evidence. One was at the end where the government summarized all of the defendant's gang names, not just Evan Johnson's but all of them so the jury could track the evidence, and two of the others were emphasizing his leadership status. That hardly seems like it's so gratuitous or over the top that it would require reversing a four-week RICO conspiracy trial where the evidence, frankly, was overwhelming. Unless the court has any further questions, I will yield the remainder of my time. Judge Guy, do you have anything for Mr. Goetz? No, I have nothing further. Then we'd ask that the district court's judgments be affirmed. Thank you. Did you reserve some time for rebuttal? I did. I reserved three minutes. I'd like to start with the idea that we're still contesting or that it was really ever contested gang membership. That was never in dispute. I think our brief is very clear about that. I don't know where he got the idea that we're claiming he wasn't a member of the gang. I don't think that's something... Your brief tells us that your client is a college student just minding his own business. No, my brief says he ended up as a college student. He was in the gang, and he was a member, and he was messaging everyone at the time. What our brief is trying to distinguish is that there's a difference between being a member and directing people to go commit crimes. That's the distinction I'm making here. Is he denying leadership? No, he's not denying leadership in general. But he's denying leadership of the CVS carjacking. The district court found it's a sentencing enhancement. It had to tie into a specific item, and that's our last argument. I think that's in the briefs. Our argument is that he didn't direct the two murders. that the trial was about. And he was acquitted of that? He was acquitted of that, but the district court still used it to sentence him anyway. Back to gang membership, the argument that you just heard is that every gang name will always be admissible because it's relevant to membership, and of course it is relevant to membership. That's why it was allowed in the trial, because the district court's decision was strike it from the indictment, but as long as there's some relevance, go ahead. And the reason aliases are discouraged in this circuit is because they're so prejudicial. Well, when they're like this at name anyway, they're so prejudicial. And the rule shouldn't be that as long as they can show gang membership, which every alias by definition in a gang will show gang membership, that can't be the rule. If you look at the Facebook messages, all of them also used Big Av. Or they could have used that, or they could have just taken away the murder and just called him Uncle. There wasn't a necessity. In the last few seconds I have, I'd like to move to the RICO enhancement issue. It was interesting to hear the argument for the first time now that, well, the notice in the indictment was surplusage. It was useless. So if they had changed the elements... What was exactly the argument? Well, what I heard the argument was is that the sentencing enhancement was not necessary. They didn't need to include it. They included it as a nice notice, but it wasn't necessary. And therefore, if they didn't follow it... The argument was it was for your client's benefit. But if they don't even follow it, I don't see... it doesn't work. One last issue is to look back on page 476 of the indictment and look at their alleging Michigan Conspiracy Law. Why do that if we're not going to use the elements of Michigan Conspiracy Law in the jury instructions? It becomes surplusage and misleading. Judge Guy, do you have anything further? I do not. Thank you. I'd like to start with where I began in my opening remarks, and that is that Riley v. California requires a search warrant. What the government is asking this court to do then is to say that a search warrant for the contents of a cell phone can be based upon a bare inference. And I suggest that that is what the facts come down to in this case. The government, I think, mischaracterizes a bit the reference in the search warrant affidavit of paragraph 9 describing what it is that is alleged there about the indictment. It says in the last sentence, these charges and others were filed in connection with various offenses by members of the BHG. It doesn't say that this is a RICO enterprise focused upon the BHG and that these activities were carried out in furtherance of that. It would be necessary for the magistrate judge who approved the search warrant to make that inference. That inference, like others, adds up, I think, to the kind of problem that this court has so often identified in good faith cases such as Carpenter and Anbank decision, McPherson and Brown, that an affidavit which is so lacking in indicia of probable cause as to render official belief in its existence is unreasonable. And that is what is here. The inference is then that would be necessary based upon the agent's references in order to find that those things identified specifically in attachment B to the search warrant. List of customers, for example. They have nothing to do with gang activity at all. Would be then required to say that there is an enterprise that is the BHG. It's not specifically set forth in the indictment. That Jefferson, in fact, is charged in a gang offense. That's not specifically alleged. I refer to indictment. I meant search warrant affidavit. Mr. Jefferson is not specifically identified in the affidavit as being charged in a gang offense. And that Mr. Jefferson used this particular cell phone at any time. The inferences, this court has said that inferences must be based upon facts. In all of these other cases where inferences have been relied upon such as in the Puffer case recently and in the Schultz case, for example, in which there's a search warrant authorized for examination of the contents of a safe deposit box. They present no facts similar to what is required based upon Riley for the examination of the contents of a cell phone here. And the particular list is set forth in attachment B. I would invite the court to look at that. And I think that you will conclude that this search warrant did not meet the exacting standards that this court has set forth in all these cases. In Brown, the court said that there are many... I think that's a good ending point. Okay. Thank you very much. Is there anything further, Judge Guy, for Mr. Gerowitz? Nothing further, thank you. Thank you. We appreciate the argument that all of you have given. We'll consider the case carefully. I note that both Mr. Paulson and Mr. Gerowitz are appointed under the Criminal Justice Act. And undertaking a representation like this involving a lengthy trial and multiple issues is even more burdensome, we know, than undertaking a simpler representation. And we're very, very grateful for your representation of Mr. Johnson and Mr. Jefferson and your advocacy on their behalf. Thank you. Thank you very much.